# Reimbursement for Defense Department Assistance to Civilian Law Enforcement Officials

The Department of Defense Authorization Act of 1982 authorizes the Secretary of Defense to seek reimbursement from civilian law enforcement agencies to whom the Department provides various forms of assistance, and the Secretary of Defense may condition his Department's provision of assistance on such reimbursement. However, the Act also gives the Secretary discretion to waive a requirement of reimbursement for assistance provided under its authority.

The Economy Act, 31 U.S.C. § 686 (1976), provides general authority for one agency to request assistance from another agency for an activity or operation that the requesting agency has authority to perform, and a performing agency should seek reimbursement for the actual cost of services provided under that Act. However, where there is specific authority for one agency to assist another, the provisions of the Economy Act do not apply.

July 24, 1982

## MEMORANDUM OPINION FOR THE ATTORNEY GENERAL

This responds to your request for an opinion regarding reimbursement for assistance provided by the Department of Defense to civilian law enforcement officials under the Department of Defense Authorization Act, 1982.[1] This Act provided the Defense Department with express authorization to provide certain assistance to civilian law enforcement officials. With such express authorization, the provision of such assistance cannot be said to violate the Posse Comitatus Act, a Reconstruction-era law generally limiting the role of the Nation's military forces in executing the law.[2] The narrow issue upon which you have requested our opinion is whether the Defense Department is required to seek reimbursement from civilian law enforcement agencies for authorized assistance it provides pursuant to this Act, or whether, under this Act, that Department is authorized to condition assistance on reimbursement although it need not do so.

It is our opinion, after reviewing the Act and its legislative history as well as a number of memoranda prepared by the Defense Department,[3] that the Act

---

[1] The Department of Defense Authorization Act, 1982, is Pub L No 97–86, 95 Stat. 1099 (1981).

[2] The Posse Comitatus Act is codified at 18 U.S.C § 1385. That Act's general restriction on the Defense Department's authority to execute the laws is made inapplicable under § 1385 itself if use of the Armed Forces is "expressly authorized by . Act of Congress. . . ."

[3] We have received five main documents from the Defense Department stating its view. (1) a Memorandum for the Deputy Secretary of Defense from the General Counsel, Defense Department, dated March 11, 1982, to which is attached a background discussion of the Act's legislative history; (2) a Memorandum for the Deputy Secretary of Defense from the General Counsel, Defense Department, dated March 18, 1982; (3) Enclosure 5 of Defense Department Directive No 5525.5, dated March 22, 1982, entitled "DoD Cooperation with Civilian Law Enforce-

Continued

authorizes but does not require that Department to seek reimbursement from civilian law enforcement agencies. Our reasons for reaching this conclusion are set forth in section II below. The Defense Department's position on the matter at issue is summarized in section I.

## I. The Defense Department's Interpretation

To understand the matter at hand, it is first necessary to set forth the major provisions of the Department of Defense Authorization Act, 1982. They are the following new §§ 371 through 377 of Title 10, United States Code (Supp. V), contained in § 905, Title IX, of the Act:

§ 371. *Use of information collected during military operations*

*The Secretary of Defense may, in accordance with other applicable law, provide to Federal, State, or local civilian law enforcement officials any information collected during the normal course of military operations* that may be relevant to a violation of any Federal or State law within the jurisdiction of such officials.

§ 372. *Use of military equipment and facilities*

*The Secretary of Defense may, in accordance with other applicable law, make available any equipment, base facility, or research facility* of the Army, Navy, Air Force, or Marine Corps *to any* Federal, State, or local *civilian law enforcement official* for law enforcement purposes.

§ 373. *Training and advising civilian law enforcement officials*

*The Secretary of Defense may assign members of the Army, Navy, Air Force, and Marine Corps to train Federal, State, and local civilian law enforcement officials in the operation and maintenance of equipment made available under section 372* of this title and to provide expert advice relevant to the purposes of this chapter.

§ 374. *Assistance by Department of Defense personnel*

(a) . . . *the Secretary of Defense,* upon request from the head of an agency with jurisdiction to enforce—
(1) the Controlled Substances Act (21 U.S.C. 801 et seq.) or the Controlled Substances Import and Export Act (21 U.S.C. 951 et seq.);

---

ment Officials", (4) a letter from the Deputy Secretary of Defense to the Attorney General, dated March 26, 1982; and (5) a letter from the General Counsel, Defense Department, to Theodore B Olson, Assistant Attorney General, Office of Legal Counsel, dated June 11, 1982.

In addition, we have received a copy of testimony by the Defense Department's General Counsel before the Subcommittee on Crime of the House Committee on the Judiciary, dated June 3, 1981, which relates generally to the issue before us Further, we have received a copy of a memorandum prepared by this Department's Office of Legal Policy on the issue at hand, dated April 30, 1982.

(2) any of sections 274 through 278 of the Immigration and Nationality Act (8 U.S.C. 1324–1328); or

(3) a law relating to the arrival or departure of merchandise (as defined in section 401 of the Tariff Act of 1930 (19 U.S.C. 1401)) into or out of the customs territory of the United States (as defined in general headnote 2 of the Tariff Schedules of the United States (19 U.S.C. 1202)) or any other territory or possession of the United States, *may assign personnel of the Department of Defense to operate and maintain or assist in operating and maintaining equipment made available under section 372* of this title with respect to any criminal violation of any such provision of law.

§ 375. *Restriction on direct participation by military personnel.*

*The Secretary of Defense shall* issue such regulations as may be necessary to *insure that the provision of any assistance* (including the provision of any equipment or facility or the assignment of any personnel) to any civilian law enforcement official *under this chapter does not include or permit direct participation by a member of the Army, Navy, Air Force, or Marine Corps* in an interdiction of a vessel or aircraft, a search and seizure, arrest, or other similar activity *unless participation in such activity by such member is otherwise authorized by law.*

§ 376. *Assistance not to affect adversely military preparedness*

Assistance (including the provision of any equipment or facility or the assignment of any personnel) may not be provided to any civilian law enforcement official under this chapter if the provision of such assistance will adversely affect the military preparedness of the United States. . . .

§ 377. *Reimbursement*

*The Secretary of Defense shall issue regulations providing that reimbursement may be a condition of assistance to a civilian law enforcement official under this chapter.*

(Emphasis added.)

The foregoing provisions authorize the Defense Department to provide various forms of assistance to civilian law enforcement officials, although certain general limitations must be observed. First, Congress took care to prevent "direct" involvement of military forces in civilian law enforcement activities, *see* § 375. Second, Congress sought to assure that assistance under the Act would not adversely affect the Nation's military preparedness, *see* § 376. In § 377, Congress specifically provided that the Secretary of Defense shall issue regulations

"providing that reimbursement *may* be a condition of assistance to a civilian law enforcement official under this chapter." (Emphasis added.)

The Defense Department's interpretation of its authority to waive reimbursement may be summarized in terms of two major propositions. First, the Department contends that when its authority for assisting civilian law enforcement officials was based on the Economy Act, 31 U.S.C. § 686 (1976), as it was prior to the passage of the Department of Defense Authorization Act, 1982, the Secretary of Defense was legally required to request reimbursement in most situations. This contention rests on an analysis of the Economy Act and decisional law, particularly that of the Comptroller General, under it. Second, the Department argues that nothing in the Department of Defense Authorization Act, 1982, changed that result. In short, the Defense Department urges that the principles of the Economy Act as applied prior to the recent Act's passage still apply.

The Defense Department's position is expressed in the letter of the Deputy Secretary of Defense to you dated March 27, 1982, where it is stated that "[t]he authority of the Secretary of Defense to make reimbursement a condition of assistance under 10 U.S.C. § 377 permits waiver of reimbursement only to the extent that reimbursement is not required by other applicable laws, such as the Economy Act." The letter proceeds to urge that Congress' intent in enacting the recent Act was "to leave in place existing laws governing the provision of assistance to other agencies," and "did not intend . . . to provide a new basis for DoD funding of civilian law enforcement activities." (Page 1.)

As a result of the Defense Department's analysis of the reimbursement issue, it concludes that the recent Act does not accord the Department any new discretion or any general authority to waive reimbursement for assistance provided to civilian law enforcement officials.

## II. Analysis of the Defense Department's Interpretation

In responding in this section to the major points underlying the Defense Department's interpretation, we will set forth our own analysis of the reimbursement issue.

(1) First, we find no reason to agree or disagree with the Defense Department's argument about the requirement, prior to the passage of the recent Act, to seek reimbursement from civilian law enforcement agencies for assistance provided to them. It is correct that the Economy Act, 31 U.S.C. § 686, is a source of authority for one agency to request assistance from another agency for an activity or operation that the requesting agency has authority to perform.[4] It also is

---

[4] As the Comptroller General has stated, the purpose of 31 U.S.C. § 686, which is § 601 of the Economy Act of 1932, as amended, is to authorize inter-agency procurement of work, materials, or equipment 57 Comp. Gen. 674, 676–77 (1978). Congress intended that economies could be achieved by providing such authority to "enable all bureaus and activities of the Government to be utilized to their fullest " *Id.* at 680, quoting H.R. Rep No 2201, 71st Cong., 2d Sess 2–3 (1931) (a report on a predecessor bill) The Economy Act, 31 U.S C. § 686, does not give the performing agency any new authority to perform any function; it only gives the requesting agency authority to request the performing agency to assist the requesting agency if the requesting agency otherwise has authority to perform the function.

467

generally correct that, under the Comptroller General's opinions interpreting the Economy Act, a performing agency should seek reimbursement for the actual cost of services provided to a requesting agency under the Economy Act.[5] However, in our view, these propositions and the argument employing them as advanced by the Defense Department are essentially beside the point in the present context.

The Economy Act, 31 U.S.C. § 686, is needed only when there is no specific authority for one agency to assist another agency, or no authority for the performing agency to take the action in the course of fulfilling its own statutory duties. In such circumstances, under the terms of the Economy Act, an agency may "place orders with any other such department, establishment, bureau, or office for materials, supplies, equipment, work, or services, of any kind that such requisitioned Federal agency may be in a position to supply or equipped to render. . . ." However, where there is specific authority for one agency to assist another, there is simply no need to rely on the Economy Act in the first place.

This point is clear not only from the Economy Act's language, but also from its legislative history, which makes plain that the chief purpose of enacting the provision was to establish general authority for one agency to assist another agency when specific authority did not satisfy the requesting agency's needs for assistance. See, e.g., 57 Comp. Gen. 675, 678–80 (1978) (reviewing the legislative history of the Economy Act, and noting that prior to its passage, some agencies had specific authority to perform certain classes of work for other agencies, but there was no general authority under which agencies could assist other agencies); H.R. Rep. No. 1126, 72d Cong., 1st Sess. 15–16 (1932).

Accordingly, we cannot accept the suggestions that the Economy Act applies in the present context and that it requires reimbursement for assistance provided by the Defense Department. Our chief difficulty with these suggestions is, in short, that the Economy Act no longer applies since there is no longer any need to use its general authority as the basis on which the Defense Department provides assistance to civilian law enforcement officials. In its plain terms, the Department of Defense Authorization Act, 1982, authorizes the Defense Department to provide certain forms of assistance to civilian law enforcement officials. In such a situation, the law concerning reimbursement under the Economy Act is inapplicable.[6]

(2) Second, the Defense Department's suggestion that nothing in the recent Act countermands its conclusion that reimbursement is required under the Economy Act cannot be reconciled with the plain language of § 377, the reimbursement provision. This provision states specifically that the Secretary of Defense "shall issue regulations providing that reimbursement *may* be a con-

---

[5] *See, e.g.,* 57 Comp Gen. 674 (1978), 56 Comp. Gen. 275 (1977); 46 Comp Gen. 73, 76 (1966); 18 Comp. Gen. 262, 266 (1938).

[6] We would emphasize that this conclusion follows directly from the existence in the Department of Defense Authorization Act, 1982, of specific authority for the Defense Department to assist civilian law enforcement agencies. The existence of this specific authority makes it unnecessary to rely on the Economy Act, 31 U.S.C § 686, as the authority for such assistance. Accordingly, even if § 377 of the recent Act had not been enacted, the Economy Act would be inapplicable in the present context.

dition of assistance to a civilian law enforcement official under this chapter."
(Emphasis added.) It is difficult to imagine how Congress could have indicated
more clearly that the Secretary may—but need not—condition assistance on
reimbursement.[7]

This conclusion is supported by the ordinary meaning of "may," which
normally indicates that one has permission or liberty to do something, not that
one is required or compelled to do something. *See Webster's Third New Interna-
tional Dictionary* 1396 (1976). A statute's terms are ordinarily to be interpreted in
light of the usual or customary meaning of the words themselves. *See, e.g.,
Southeastern Community College* v. *Davis,* 442 U.S. 397, 405 (1979). More-
over, it is significant that in § 377, Congress spoke of reimbursement in terms of
what the Secretary "may" do, whereas it spoke of the issuance of regulations
dealing with reimbursement in terms of what the Secretary "shall" do. This
contrast in the use of terms suggests strongly that when Congress wanted to
impose a mandatory requirement in this statute—indeed, this very provision—it
knew how to do so.

If the plain language of § 377 were an insufficient basis on which to rest the
conclusion that the Secretary has discretion to decide whether to condition
assistance under the Act on reimbursement, then we believe that consideration of
the provision's legislative history confirms the foregoing reading of its plain
meaning.

The predecessor provision in the bill introduced in the Senate, S. 815, 97th
Cong., 1st Sess. (1981), also was permissive on its face with respect to the issue
of reimbursement. It provided:

> The Secretary of Defense shall . . . issue such regulations as may
> be necessary to insure that reimbursement for the provision of
> assistance, including the provision of any equipment or facility,
> under this chapter to any Federal, State, or local civilian law
> enforcement official may be obtained *whenever the Secretary of
> Defense determines such reimbursement to be appropriate.*

(Emphasis added.)[8] The report of the Senate Committee on Armed Services
stressed that the bill's language was intended to authorize the Secretary to provide
certain indirect assistance to civilian law enforcement officials without requiring
the Defense Department to provide such assistance. The report also noted that the
decision whether to request reimbursement for such assistance was within the
Secretary's discretion to so act as "appropriate." As the report stated:

> The Secretary of Defense would be authorized, not required, to
> provide this aid. And *the Department of Defense could obtain*

---

[7] We note that because § 377 on its face deals only with "assistance" provided by Defense "under this chapter
[§§ 371–77]," any assistance provided by the Department of Defense pursuant to any other existing authority that
predated, and is not overlapped by, this Act is not covered by § 377. In other words, if assistance is not authorized by
the recent Act, then its provision continues to be governed by the Economy Act

[8] The reimbursement provision in the Senate bill would have been a new § 374(b) of Title 10, United States Code;
it appears at pages 64 to 65 of the printed Senate bill

> *reimbursement for any assistance provided when the Secretary
> determined such reimbursement was appropriate.*

S. Rep. No. 58, 97th Cong., 1st Sess. 149 (1981) (emphasis added).

The House bill, H.R. 3519, 97th Cong., 1st Sess. (1981), contained the same reimbursement provision as the Senate bill.[9] The report of the House Committee on Armed Services noted specifically that the provision was intended to authorize the Secretary to issue regulations "to ensure reimbursement for provisions of assistance, equipment and facilities *whenever he determines reimbursement is appropriate. . . .*" (Emphasis added.) H.R. Rep. No. 71, 97th Cong., 1st Sess. (pt. 1) 164 (1981).

The report of the House Committee on the Judiciary, to which the bill was sequentially referred, elaborated upon the permissive nature of the reimbursement authorization:

> The final subsection of proposed section 374 authorizes the Secretary of Defense to issue *regulations which may condition the rendering of any assistance under this Chapter upon a reimbursement to the military.* According to information received from the Coast Guard, United States Customs Service, and the Department of Justice (the Federal agencies most likely to request assistance), this reimbursement provision is acceptable and should not require any immediate increase in the budgets of those agencies. *The availability of this reimbursement option is not meant to serve as an excuse for the Secretary of Defense to decline to cooperate in the provision of assistance.* Rather, the reimbursement option should serve instead as an informal check of the magnitude and frequency of the requests made by civilian law enforcement officials. *The availability of military assistance is not intended by the Committee to be an indirect method of increasing the budget authority of the civilian law enforcement agency.*

H.R. Rep. No. 71, 97th Cong., 1st Sess. (pt. 2) 11 (1981) (emphasis added).

In the foregoing discussion, the House Judiciary Committee clearly sought to tread a careful line between seeming to impose an undue burden on federal civilian law enforcement agencies, on the one hand, and to impose an excessive burden on the Department of Defense by indirectly "increasing the budget authority of the civilian law enforcement agency" involved, on the other hand. At the same time, the foregoing passage, by referring specifically to "the reimbursement *option*" created by the bill (emphasis added), makes plain that reimbursement under the House bill would not be required by the bill itself, but rather was to be an option available to the Defense Department. The Committee acknowledged that the need to pay for assistance authorized by the bill was likely to operate as an informal check on the number and size of requests for such

---

[9] The reimbursement provision appears at page 44 of the printed House bill.

assistance. As the Committee put it, "the reimbursement option should serve . . . as an informal check on the magnitude and frequency of the requests made by civilian law enforcement officials." Nevertheless, such a "check" was evidently intended to operate as the result of a *discretionary* decision by the Secretary of Defense to request reimbursement in a particular case, not as the result of any requirement of reimbursement under the bill itself.

The discussion of the reimbursement provision contained in the House bill by the third House Committee to which the bill was referred, the Committee on Government Operations, confirms that reimbursement was to be an option, not a requirement:

> Section 908 of H.R. 3519 as reported by the committee of original jurisdiction contains the following language:
>
> The Secretary of Defense may assign members of the armed forces to train Federal, State, and local law enforcement officials in the operation of military equipment . . . and to provide expert advice relevant to the purposes of this chapter, if the provision of such training or advice will not adversely affect the military preparedness of the United States.
>
> • *An additional provision of the section specifies that the Secretary of Defense shall issue such regulations as may be necessary to insure that reimbursement for the provision of such assistance is obtained when the Secretary deems such reimbursement to be appropriate.*

H.R. Rep. No. 71, 97th Cong., 1st Sess. (pt. 3) 37 (1981) (emphasis added).[10]

During floor debate on the House bill, it was acknowledged once again that reimbursement for assistance provided to civilian law enforcement officials by the Defense Department would be an option of the Secretary of Defense. Congressman Bennett, for instance, stated that:

> *Section 374 requires the Secretary of Defense to issue regulations:* First, to insure that the provision of assistance, equipment, or facilities does not impair military training or operations necessary to the military preparedness of the United States; and second, *to insure reimbursement for the provision of assistance obtained from the Department of Defense when the Secretary determines it is appropriate.* The regulations provided by this section will insure that the cooperation with the civilian law enforcement officials does not interfere with carrying out the primary mission of our Armed Forces, that is, military preparedness. *The regulation will also insure that the law enforcement cooperation is not done at the expense of defense activities.*

---

[10] In another passage of the report of the House Committee on Government Operations, it is reaffirmed that the House bill would extend authority to the Secretary of Defense to provide training services and advice "without reimbursement, if he determined that to be appropriate." H R Rep. No 71, 97th Cong., 1st Sess. (pt. 3) 37 (1981).

> The results of the Armed Forces work should not be used at the cost of defense budgets to support the activities of other agencies of Government regardless of how laudable those activities might be. *I understand the Department of Defense has always required reimbursement in the past, and it will continue to do so under these provisions.*

127 Cong. Rec. H 4056–57 (daily ed. July 8, 1981) (emphasis added). These remarks reflect sensitivity to the potential problems that could arise if the Defense Department were not allowed to seek reimbursement for the assistance it provides to civilian law enforcement agencies. The reimbursement option evidently was designed to "insure that the law enforcement cooperation [as authorized by the bill] is not done at the expense of defense activities." In this context, Congressman Bennett noted that "in the past" the Defense Department had required reimbursement, and that it intended to do so in the future. At the same time, these remarks do not purport to, and they do not, state any legal requirement that reimbursement be sought under the bill. To the contrary, the remarks are directly tailored to protect the Defense Department's authority to obtain reimbursement when the Secretary deems it "appropriate."

Another pertinent discussion of reimbursement during the House debate is the following by Congressman Hughes:

> Mr. Chairman, . . . under the provisions of the bill any loaning of equipment or any loaning of personnel is reimbursable. *It does not come out of the Department of Defense budget. We are not asking the Defense Department to use their amounts set aside for the military mission for law enforcement purposes.*
>
> All we are doing is, we are trying, first of all, to codify the existing practices relative to the sharing of intelligence, the sharing of base facilities, the sharing of research, and we have taken it one step further; they need equipment from time to time, but it is an empty gesture when you offer equipment and do not offer the manpower to operate the very sophisticated equipment. . . .

*Id.* at H 4066–67 (emphasis added). Although the foregoing remarks indicate concern about using Defense Department funds appropriated for military missions to provide assistance to civilian law enforcement agencies, the comments are limited in their reference: "*We are not asking* the Defense Department to use their amounts set aside for the military mission for law enforcement purposes." (Emphasis added.) We believe that this statement means only that *Congress* did not intend to require the Defense Department to pay for the assistance it provides as authorized by the bill. Indeed, the bill specifically empowers the Defense Department to seek reimbursement. Congressman Hughes' comments, like those discussed above, do not purport to establish any legal requirement that reimbursement must be sought by the Defense Department, even though they indicate an expectation that reimbursement might frequently be sought. This

472

crucial point is further confirmed by the statement of Congressman Sawyer that "*the law enforcement agency* requesting the military equipment *is chargeable* for the use of that equipment." *Id*. at 4067 (emphasis added). To say that a civilian law enforcement agency is "chargeable" under the bill is not to say that such an agency *must* be charged for assistance authorized by the bill.

If there were any substantial doubt remaining after a survey of the foregoing comments in the legislative record about the conclusion that the Defense Department has discretion to decide whether to condition assistance on reimbursement, such doubt is dispelled by the report of the conference committee, which stated the following about the reimbursement provision:

> *This section authorizes the Secretary of Defense to issue regulations providing that reimbursement may be a condition of the assistance to civilian law enforcement officials under this chapter.* This provision was contained, in slightly different form, in both bills. *The regulation should reflect sufficient flexibility to take into consideration the budgetary resources available to civilian law enforcement agencies.*

H.R. Rep. No. 311, 97th Cong., 1st Sess. 122 (1981) (emphasis added). If the conference committee had sought to require the Secretary of Defense to condition assistance on reimbursement, it would hardly have been consistent for the committee to have noted that the reimbursement provision provides "sufficient flexibility to take into consideration the budgetary resources available to civilian law enforcement agencies." Such "flexibility" in fact is reflected in the language ultimately enacted, which provides that the Secretary of Defense "may" condition assistance under the Act on reimbursement.

In view of the plain language of § 377 and the fact that the relevant committee reports and floor debates confirm that Congress sought to provide flexibility to the Secretary to determine whether to require reimbursement, we conclude that the Secretary of Defense has discretion under the Act to decide whether to request reimbursement for assistance rendered pursuant to the Act. Since the Act's fundamental purpose was to provide the express authorization for the Defense Department to assist civilian law enforcement officials notwithstanding the general restriction under the Posse Comitatus Act, *see* note 2, *supra*, there is no longer any need for the Defense Department to rely on the Economy Act in providing the assistance authorized by the Act. In short, since the reimbursement provision of the Department of Defense Authorization Act, 1982, governs, and since that provision is permissive, we conclude that the Secretary of Defense is authorized but not required to seek reimbursement for assistance rendered under the Act.

(3) In opposition to the foregoing analysis of § 377 and its legislative history, the Defense Department maintains that Congress intended to retain under this Act the strictures of the Economy Act, 31 U.S.C. § 686. This position rests on three main arguments.

473

First, the Defense Department contends that the language of § 372, which limits the provision of assistance under that section "in accordance with other applicable law," effectively incorporates, albeit indirectly, the Economy Act into this Act. Second, the Defense Department seeks support in a variety of passages in the legislative history indicating that Congress expected that the Defense Department would not have to pay for all of the assistance rendered under the Act. Third, the Defense Department notes that it is charged with implementing the Act by means of regulations. For this reason, the Department suggests, even if implicitly, that its interpretation should be given particular weight. We will discuss each argument in turn.

## A. The Language of § 372

The Defense Department's primary textual argument is that the phrase, "in accordance with other applicable law," in § 372 incorporates in this Act the law relating to reimbursement under the Economy Act, 31 U.S.C. § 686. Section 372 states:

> The Secretary of Defense may, *in accordance with other applicable law,* make available any equipment, base facility, or research facility of the Army, Navy, Air Force, or Marine Corps to any Federal, State, or local civilian law enforcement official for law enforcement purposes.

(Emphasis added.)

The central support for this reading of the phrase, "in accordance with other applicable law," is the following passage from the report of the House Committee of the Judiciary, H.R. Rep. No. 71, 97th Cong., 1st Sess. (pt. 2) 9 (1981):

> *The Committee on Government Operations expressed some concern that the proposed section,* as reported by the Armed Services Committee, *could cause potential conflicts with the application of other property disposition statutes. Thus,* at the recommendation of the Committee on Government Operations and with the support of the Department of Defense, *the* [Judiciary] *Committee added the phrase 'in accordance with other applicable law' to clarify the continued application of the disposition procedures of the Economy Act, 31 U.S.C. 638a, and other similar provisions. See, e.g., 10 U.S.C. 2576 and 2667* (governing the disposition of certain real and personal military property).

(Emphasis added.) The foregoing reference to the "disposition procedures of the Economy Act, 31 U.S.C. 638a," is said by the Defense Department to demonstrate that Congress intended to retain the reimbursement requirements that would apply if the provision of assistance to civilian law enforcement agencies under the Act were to proceed entirely under the Economy Act, 31 U.S.C. § 686.

474

We have a number of difficulties with this contention. First, the statute cited as the Economy Act in the foregoing passage from the Committee report, 31 U.S.C. § *638a*, is not the same as the statute upon which the Defense Department seeks to rely, namely, 31 U.S.C. § *686*. The statute actually cited by the Committee—31 U.S.C. § 638a—deals specifically with the purchase, operation, use, and maintenance of passenger motor vehicles and aircraft by the federal government.[11] Although it might be suggested that the Committee report made a mistake in citation, the statute actually cited does appear directly relevant to the point the Committee report was making, namely, that "disposition procedures" specifically relating to federal property should continue to apply.

Moreover, it bears noting that such "disposition procedures" are not in any obvious or necessary sense "similar" to principles of reimbursement under 31 U.S.C. § 686.[12] The two statutes cited by the Committee in addition to 31 U.S.C. § 638a deal respectively with the sale to law enforcement and firefighting agencies of surplus military equipment, 10 U.S.C. § 2576, and leases by military departments of "non-excess" property, 10 U.S.C. § 2667. These statutes, combined with 31 U.S.C. § 638a, place specific limits on the disposition of federal property. The particular requirements in these three statutes are simply not the same as the general principles concerning reimbursement on which the Defense Department seeks to rely.

The evidently limited reference of the "other applicable law" language in § 372 is confirmed by a passage in the report of the House Committee on Government Operations. It should be recalled that the House Judiciary Committee, in adding the "other applicable law" language, stated that it was doing so in response to the concern of the Government Operations Committee that the lack of such language "could cause potential conflicts with the application of other property disposition statutes." Accordingly, the explanation of the Government Operations Committee of the meaning of the phrase "other applicable law" should be given particular weight. That Committee explained the language as follows:

> Under an amendment adopted by the Judiciary Committee on June 9, 1981, the provision of military equipment and facilities to law enforcement officials would be made 'in accordance with applicable law.' *It is the Committee's understanding that this language would bring [the section] under the terms of the property management and disposal provisions of the Federal Property and Administrative Services Act of 1949.*[13]

---

[11] Under 31 U S.C § 638a, a number of limitations are placed on the purchase or hire of passenger motor vehicles and aircraft by the federal government.

[12] The need to be clear about exactly which statutes were intended to remain applicable under § 372 is obvious in light of such additional statements in the legislative history as the following: "The sale, donation or other outright transfer of such equipment to civilian law enforcement agencies shall be *in accordance with existing statutes* covering such transfers " S. Rep. No. 58, 97th Cong., 1st Sess. 149 (1981) (emphasis added). This statement suggests, but by itself does not make fully clear, that the relevant statutes are those dealing specifically with property or equipment transfers, which constitute a distinct subject from that of reimbursement for any of a variety of types of assistance provided by one agency to another under 31 U S C § 686.

[13] *See also* H.R. Rep. No 311, 97th Cong., 1st Sess 119 (1981) ("This provision [speaking of "other applicable law"] assures the continued application of existing law, such as the Federal Property and Administrative Services Act of 1949 ")

475

H.R. Rep. No. 71, 97th Cong., 1st Sess. (pt. 3) 37 (1981). This reference to the Federal Property and Administrative Services Act underscores that the Government Operations Committee's intention was to guarantee that that statute's provisions—not general reimbursement principles under 31 U.S.C. § 686— would continue to operate under this Act.

In short, we are unconvinced that the inclusion in § 372 of the "other applicable law" language was intended to have the far-reaching effects attributed to the language by the Defense Department. We believe that the phrase "other applicable law" in § 372 refers to the specific statutes cited in the legislative history, which do not include 31 U.S.C. § 686. This conclusion is buttressed by the canon of statutory construction that each provision of a statute should be read to have independent meaning.[14] If § 372 had been intended to have the meaning attributed to it by the Defense Department, it would constitute in effect a nullification of the plain language of § 377, a result finding no support in the language, history, or purposes of the Act.[15]

## B. The Act's Legislative History

The Defense Department also argues that the legislative history supports its view that the Secretary of Defense has no general authority to waive reimburse-

---

[14] Courts have noted that, in the normal case, every word Congress uses in a statute should be given effect *See. e g , Reiter v. Sonotone Corp.*, 442 U S 330, 339 (1979). This approach is reflected in the notion that the "meaning of a statute is to be looked for, not in any single section, but in all the parts together and in their relation to the end in view," *Panama Refining Co. v Ryan*, 293 U S 388, 439 (1935) (Cardozo, J , dissenting), and that "a section of a statute should not be read in isolation from the context of the whole Act. . ." *Richards v. United States*, 369 U S. 1, 11 (1962). Moreover, a court interpreting a statute is not "at liberty to imply a condition which is opposed to the explicit terms of the statute . . To [so] hold     is not to construe the Act but to amend it " *Detroit Trust Co. v The Barlum*, 293 U S. 21, 38 (1934), quoted in *Fedorenko v United States*, 449 U S. 490, 513 (1981)

[15] We also note that § 371 specifies that action pursuant to it shall be "in accordance with other applicable law." This provision authorizes the sharing of information obtained by the Defense Department "during the normal course of military operations." To what does the "in accordance with other applicable law" language in § 371 refer? To be consistent with its argument about § 372, the Defense Department apparently would have to argue that it refers to the Economy Act, 31 U.S.C. § 686

However, we are aware of no legislative history to that effect Indeed, the House Judiciary Committee specifically stated that the "other applicable law" language in § 371 refers to the Privacy Act (without mentioning 31 U S.C. § 686). "The phrase 'in accordance with other applicable law' as used in section 371 is meant to continue the application of the Privacy Act to this type of intelligence sharing. *See* 5 U.S.C. 552a." H.R. Rep. No 71, 97th Cong., 1st Sess. (pt 2) 8 (1981) *See also* H.R. Rep. No 311, 97th Cong , 1st Sess. 119 (1981). This explanation of § 371 seems to confirm a pattern by which Congress, in referring to "other applicable law" in certain provisions granting the Defense Department authority to provide assistance, was intending to refer to statutes directly bearing on the specific subject matter of the authorizing provision in question Such a pattern is not consistent with the Defense Department's suggestion that "other applicable law" refers to a broad set of principles relating to reimbursement under the Economy Act in general

Furthermore, even if the phrase referring to "other applicable law" in §§ 372 and 371 were to be construed— contrary to what we consider the reasonable construction—as effectively nullifying the reimbursement provision, it is difficult to understand how such a construction would lead to the result sought by the Defense Department with respect to assistance provided under §§ 373 and 374 The latter two provisions do not contain "other applicable law" language. Although they do refer to equipment provided under § 372, their subjects are distinct from that of § 372: § 373 deals with the use of Defense personnel in training and advisory capacities, and § 374 deals with the use of Defense personnel in operating and maintaining equipment provided under § 372 In order for the Defense Department to establish its position with respect to §§ 373 and 374, it would be necessary to conclude that the fact that those sections involve the use of personnel in connection with equipment provided under § 372 is sufficient to limit the assistance of such personnel in the same manner that the use of equipment is said to be limited under § 372 "in accordance with other applicable law" We believe that this argument is excessively attenuated. Not only does it depend on an interpretation of "other applicable law" that is not borne out by the legislative history, but it also depends on reading into §§ 373 and 374 language that is not contained in those provisions

ment for assistance provided under the Act. The initial difficulty with this argument is that legislative history cannot serve to supersede the plain language of a statutory provision such as § 377. It is an established canon of statutory construction that "legislative intention, without more, is not legislation." *Train* v. *City of New York,* 420 U.S. 35, 45 (1975).

In any event, we do not read the passages in the legislative history on which the Defense Department seeks to rely as supporting the view advanced by that Department. The problems with relying on the passages may be shown with reference to each one.

One of the central passages relied upon in the March 26, 1982, letter from the Deputy Secretary of Defense to the Attorney General is the following drawn from remarks by Congressman Hughes during floor debate on the House bill:

> [U]nder the provisions of the bill any loaning of equipment or any loaning of personnel is reimbursable. It does not come out of the Department of Defense budget. *We are not asking the Defense Department to use their amounts set aside for the military mission for law enforcement purposes.*

127 Cong. Rec. H 4066 (daily ed. July 8, 1981). These remarks are quoted in their fuller context above.

The main observation to make about the foregoing remarks is that they merely state that the Defense Department is not required under the Act to use money appropriated specifically for military purposes to pay for assistance provided under the bill. As Congressman Hughes noted, Congress is "not asking the Defense Department to use their amounts set aside for the military mission for law enforcement purposes." That, however, is not the question before us. Our question is whether the Defense Department has discretion under the Act to determine whether it will condition authorized assistance on reimbursement. It is, in brief, a *non sequitur* to argue that because Congressman Hughes indicated that Congress was not requiring the Defense Department to use military funds to pay for assistance provided under the bill, therefore the Defense Department is required by the Act to demand reimbursement when it does provide assistance. The latter proposition, in our view, is not established by the quoted comments.

Another passage relied upon by the Defense Department is taken from testimony by the Department's General Counsel on June 3, 1981, as follows:

> Section 374 [of the House bill] contains two provisions of considerable importance to the Department of Defense. . . . Subsection (b) requires the Secretary to issue regulations governing reimbursement to the Department of Defense, an essential element of the legislation. The funding of nonmilitary law enforcement activities is the responsibility of those agencies given the authority to investigate and prosecute crimes against the United States. *The Department of Defense is pleased to provide assistance, consistent with the limitations set forth in this legislation*

477

> *and other laws, but we cannot use defense resources to fund the*
> *activities of other agencies of the federal government. We have*
> *required reimbursement in the past when costs have been incurred*
> *in the provision of such assistance, and we shall continue to do so*
> *under the provision of this legislation if enacted.*

*Posse Comitatus Act: Hearings on H.R. 3519 Before the Subcomm. on Crime of the House Comm. on the Judiciary,* 97th Cong., 1st Sess. 15–16 (1981) (emphasis added). In the Defense Department's view, this statement confirms that it always has intended to approach the issue of reimbursement under the Act in the same manner in which it approached reimbursement prior to the Act's passage.

Our difficulty with relying on this testimony in the present context is that it merely reflects the Defense Department's intention at the time of testimony with respect to implementing any powers it would have under the bill, if enacted, and it discusses the Department's past practices regarding reimbursement. However, these are not the issues with which we are primarily concerned. Our question is whether the Act *requires* the Defense Department to implement its stated desire of seeking reimbursement in certain circumstances.[16] The testimony of the General Counsel establishes only that the Defense Department informed Congress that it would generally seek reimbursement, but this does not clarify the fundamental issue whether that Department is legally compelled to do so.

An additional passage in the legislative history relied upon by the Defense Department is the following from the report of the House Judiciary Committee:

> The final subsection of proposed section 374 authorizes the Secretary of Defense to issue regulations which may condition the rendering of any assistance under this Chapter upon a reimbursement to the military. According to information received from the Coast Guard, United States Customs Service, and the Department of Justice (the Federal agencies most likely to request assistance), this reimbursement provision is acceptable and should not require any immediate increase in the budgets of those agencies. *The availability of this reimbursement option is not meant to serve as an excuse for the Secretary of Defense to decline to cooperate in the provision of assistance. Rather, the reimbursement option should serve instead as an informal check of* (sic) *the magnitude and frequency of the requests made by civilian law enforcement officials. The availability of military assistance is not intended by the Committee to be an indirect method of increasing the budget authority of the civilian law enforcement agency.*

H.R. Rep. No. 71, 97th Cong., 1st Sess. (pt. 2) 11 (1981) (emphasis added).

---

[16] One must bear in mind the fundamental distinction between a requirement to do X and the authority to do X. In this context, the Defense Department has the authority to implement its stated intention of seeking reimbursement under the Act's reimbursement provision This does not mean, however, that the Department is necessarily required to seek reimbursement. The two matters are and must be kept analytically distinct.

Our inability to derive from the foregoing passage the conclusion preferred by the Defense Department rests primarily on the fact that the passage speaks of reimbursement in terms of an "option" available to the Defense Department, not in terms of a legal requirement. As we noted earlier, it is clear that the Committee was sensitive to the need to balance the interests of the Defense Department in not having to pay for all of the assistance it provides to civilian law enforcement officials against the legislative desire to authorize such assistance. But it simply does not follow from this that the Defense Department is legally *required* under the Act to seek reimbursement. If it were, the Department would not have the "option" evidently contemplated by the Committee.[17]

To summarize, the Defense Department's argument based on legislative history founders, first, on the canon of construction that legislative history cannot overcome the plain language of a statutory provision and, second, on the fact that the passages cited do not appear directly to support the notion that the Department is required by the Act to seek reimbursement for assistance authorized by the Act.

## C. The Defense Department's Construction of the Act

Implicit in the Defense Department's position is the further argument that its interpretation of Congress' intention should be controlling since it is the agency charged with implementing the statute by regulation. Also, it actively participated in the legislation's drafting, and thus may be presumed to have intimate knowledge of the congressional design. We acknowledge that these facts distinguished the present case from one in which an agency charged with implementing a statute has not been similarly involved with the statute in question. Surely a court reviewing the legal issue presented to us would accord a responsible agency's view a certain respect in light of the normal understanding that such an agency is in a position to grasp the legislature's intent.[18]

However, there are two difficulties with relying on any presumption that the Defense Department's views should be accorded special weight in this case. First, the Defense Department is not the only agency in the Executive Branch affected by the authority conferred by the Act, nor is it the only agency that was involved in deliberations prior to the Act's passage. This Department, as the major civilian law enforcement agency, is intimately affected by the Act and played a role in deliberations leading to its enactment. Accordingly, any argument by the Defense Department that its views should be accorded special consideration must be balanced against the fact that it is not the only department whose views are entitled to consideration.

More importantly, a court will not blindly give weight to a particular agency's views of a statute affecting the agency. To the contrary, courts have made clear

---

[17] For further discussion of this passage from the House Judiciary Committee report, *see supra*.

[18] *See generally Red Lion Broadcasting Co.* v. *FCC,* 395 U S. 367, 381 (1969); *Zemel v. Rusk,* 381 U.S 1, 11–12 (1965); *Udall* v. *Tallman,* 380 U.S. 1, 16 (1965). *See also SEC* v *Sloan,* 436 U.S 103 (1978); *General Electric Co.* v *Gilbert,* 429 U.S. 125, 141 (1976).

that their primary responsibility of deciding issues of law arising in cases involving challenges to an agency's action requires them to reach an independent judgment in light of statutory language and legislative history. Courts in general will not defer to an administrative interpretation when it is not consistent with a statute's language and history. [19]

In this case, there is no doubt that the Secretary of Defense, subject to the supervisory power of the President, has the authority and responsibility to issue regulations dealing with the issue of reimbursement. However, the Secretary may not read into the statute a legal requirement that is not contained therein. In our view, for the reasons stated earlier, we do not believe that the Secretary is required by the Act to seek reimbursement.

## III. Conclusion

In conclusion, we believe that the Act's reimbursement provision means what it says: the Secretary of Defense "shall issue regulations providing that reimbursement may be a condition of assistance" under the Act. We cannot find in this provision, its legislative history, other provisions of the statute, or the Act's legislative history in general any legal *requirement* that reimbursement be sought under the Act. Also, since this Act provides authority for the Defense Department to assist civilian law enforcement officials in certain circumstances, there is no occasion to rely on the Economy Act, 31 U.S.C. § 686, as the authority under which the Defense Department will provide such assistance. Therefore, this is not a situation in which reimbursement is governed by the law that would have applied under the Economy Act itself.

THEODORE B. OLSON
*Assistant Attorney General*
*Office of Legal Counsel*

---

[19] A court's deference to an agency's construction is constrained by the statute's language, history and purposes. *See Teamsters* v. *Daniel,* 439 U.S 551, 566 n 20 (1979), *Morton* v. *Ruiz,* 415 U.S. 199, 237 (1974); *Billings* v. *Truesdell,* 321 U S. 542, 552–53 (1944); *Great Northern Ry Co.* v. *United States,* 315 U.S 262, 275–76 (1942); *United States* v. *Jackson,* 280 U.S 183, 193 (1930). Courts are the final authorities on issues of statutory interpretation and "are not obliged to stand aside and rubber stamp their affirmance of administrative decisions that they deem inconsistent with a statutory mandate or that frustrate the congressional policy underlying a statute " *Volkswagenwerk Aktiengesellschaft* v. *FMC,* 390 U.S. 261, 272 (1968).